The first case for argument this morning is 18-1053, Xactware Solutions v. Eagle View. Mr. Nikolsky, whenever you're ready. Good morning, Your Honors. Thank you for your support. I'd like to reserve three minutes of rebuttal time if I could. Thank you. Your Honors, this case is a consolidated appeal of four inter-parties review proceedings involving Eagle View's 454, 770, 152, and 737 patents. I believe that there are three central issues that require discussion today. The first issue addresses whether the Board committed legal error in its analysis of secondary considerations of non-obviousness, and that issue impacts all four patents in this case. The second issue, Your Honors, is whether the Board improperly excluded Xactware's arguments that the Avrahami reference teaches the movement limitation, and that issue pertains to the 770 patent in particular. And the third and final issue, Your Honors, is whether the Board failed to conduct an adequate and substantive analysis of the prior art with respect to dependent claims 10, 15, and 25 of the 152 patent. On page 34 of the blue, excuse me, of the blue brief, you argue, quote, because the patent inventions of each of the 152, the 454, the 737, and the 770 patent are merely components of the Twister and RenderHouse products, the coextensive requirement of the presumption of nexus standard can't be satisfied. Yes, Your Honor. If you have a product which embodies two patents you hold, are both patents at issue, and both patents are at issue? Yes. Are you barred from showing the gram factors because both patents contribute to success? Your Honors, I think the answer to that question is that you have to show, again, that the claims, even though there might be two patents, that the claims themselves are coextensive with whatever is alleged to be commercially successful. There is some case law, I think, that the parties have signed it, which have dealt with two patents, for example. One patent actually dealt with a pharmaceutical composition, and the second patent dealt with a method of manufacturing the pharmaceutical composition. There it was shown that they were both coextensive with the product that was alleged to be successful. You say that a statement from Eagle View that it's doing business with one-fifth of the contractor market doesn't indicate market share because there's no evidence of actual sales. What's your authority for that? Well, Your Honors, I believe what we're saying there is that there's no evidence of the comparison of the sales to how much was actually, their sales to how much was actually done in the marketplace itself. The case law authority for that, I could bring up on rebuttal, Your Honors, if I could. So, Your Honors, with respect to the... You don't have any citing. Understood, Your Honor. Can I ask you further about this nexus question? Yes. There's a whole lot of ink spilled between you and your friend about the cases, and does embodying coextensive, does is mean is. At the end of the day, though, I'm looking at the record. Yes, Your Honor. And the patent owner puts in, on questions of secondary consideration, I'm not sure they mention presumption or not, but they keep saying the patented invention, the products are the patented invention, are or is. You come in and all of your pages on secondary considerations never go to that argument at all. It's my view of what you say in reply, is simply you're going after their witness, their expert, and kind of saying, well, he didn't prove that the reports that were issued even practice the twister and whatever. Goes on for three pages that they don't even practice the claims. You have one phrase that says, and not some other feature, which has no site to the record. Now, you have a lot of sites in your briefs that have different portions of that and different arguments, I see none of that in the record that was before the board. So, even if you're right in terms of the legal niceties of what we've said about coextensive and embodied, I don't see how here, whether it was for presumption of nexus or for nexus at all, you made a sufficient case before the board to result in their concluding anything other than they concluded. Your Honor, in response to that, I would argue that we did sufficiently present that argument to the board and that there was sufficient evidence that we pointed to. Okay, show me where. So, in the petitioner's reply, for example, where we talk about... What page number? I'm on 1787. I'm assuming that's where you're going to be. That's correct, Your Honor, yes. Okay, where? 1786 to 1788. And I believe we make the statement there, Your Honors, and I'm asking my colleague to give me a copy of the opinion so I can have it in front of me. We make the statement that there is no evidence of record that the reports for which there were commercial sales were actually generated using the patented method claims. That appears later in the argument, Your Honors, I believe towards the end of that section, and that is... No, no, I understand. You're saying your whole argument, that's what I thought I was saying, that your whole argument was these reports aren't even using the patented methods. And the board rejected that argument on the experts, and you didn't have an expert, and it seems to me... Well, let me ask you, if we conclude that there was substantial evidence for the board to reject your argument, who cares about these reports of the product that was sold, and they have nothing to do with the twister, et cetera. If the board rejected that, then we don't even really get to the nuances of a nexus argument. That's just a different side of it, right? So are you telling me you argued something other than that? Your Honors, I believe we did argue what you're talking about. Okay, show me where. I believe it is in the pages that we quoted. Where? Read me the sentences, yeah. Again, I'm looking for my colleague for the actual page of where we had the argument itself. So, Your Honors, I'm looking here. Page citation. So the page citation here is on 1787 at the bottom. Importantly, patent donor has failed to prove a nexus between the claims of the 454 patent and the purported commercial success or industry praise. In an attempt to demonstrate commercial success, the patent donor inundated with a plethora of evidence of reports without providing much of an explanation of what is being showed. And then as we go further here, Your Honors, we say here, although the patent donor claims that its reports were generated using the Twister and RenderHouse software, there is no evidence that the reports were generated using the specific claimed method steps of the 454 patent. And Judge Prost, I think that goes to the heart of the issue with respect to nexus, that they have alleged, their expert has alleged, Dr. Bajaj, that the software, the Twister and RenderHouse software, could embody the claims of these particular four patents. What they have not shown, and what Dr. Bajaj has not shown, is that the merits of those patent claims, the merits of the 770, which calls for specific GUI steps that are undertaken by GUI, graphical user interface steps, that are taken to generate the report. Can I just ask you, I'm looking at what you cited. There's no record cite to any of this. Now you say, in the first sentence you wrote, it says, see generally 2012 to 2015. But when you go, this other paragraph that you're talking about here, there's nothing in the record, right? In this particular document, there's no citation, Your Honor, correct? Well, and the sentence after the sentence you read says, therefore, patent owner has failed to prove a nexus because there's no evidence the roof reports sold by patent owner and praised by the industry were created using the claimed features and not some other feature. I mean, I guess I'm having the same concern that Judge Prost is, that you have pretty significantly shifted your argument on appeal into something that I'm having trouble seeing that you raised below in these two pages. Yes, Your Honor, and I understand the point. I believe that we're not confined just to these two pages. I think if we look at the totality of the record... The pages you cited in your entire red brief, you cited 1767 to 1787, 1786 to 1788. You cited no other pages in your brief. I think that was exemplary of the other hearings as well where we talked about the other patents as well, but it was a similar argument, yes, Your Honor. They argued waiver. In your reply brief, you knew that they were saying you waived this argument. And all that you can point me to right now are the same two pages that you pointed me to in your brief, but you're saying, but it exists magically somewhere else in the record, but you're not prepared to show me where or tell me where? Your Honor, I think that is the crux of the case in chief before the PTAB. That was where that argument was raised in the reply brief, so we are not disputing that. But what we are submitting to this court though is that there was legal error in the application and it is within the power of this court to look at the legal record, to look at the evidence that's already of record in the case underlying it, and establish whether there was a proper legal conclusion of secondary considerations. Well, frankly, the only two things I'd respond to you there are one, even if there were a legal error, it would be harmless error if in fact you put on nothing and it wasn't clear to the board that you were even arguing this point before the board. And the board does use the term embody, but it also, in its conclusions, uses the term coextensive. So even to find legal error, if we found it had some impact on this case, which I think we're all having a little struggle doing that, the board used the term extensive, coextensive. I mean, I'm not gonna say that our precedent is necessarily 1,000% crystal clear. We use the word coextensive frequently and we've used the word embody. The board kind of did the same thing, but at the end, its conclusions were it is coextensive. So tell me why, under those circumstances, we get to a legal error determination. I think in the actual written opinion, Your Honor, really all it was was a recitation of the law, a recitation of Brown v. Williamson. If we look at Appendix 23, for example, which is the board's opinion in the 454 decision, the board quotes this court's reasoning. The product embodies the claim features and is coextensive with them, but then conducts, after that, no actual application of the law or no actual application or analysis of the coextensive requirement to the facts of the case. That is whether there's legal error. And you're asking whether or not there's substantial evidence. I think it's both, Your Honor, yes. I think it's both. I think it's a legal error in the application of the law. That's a substantial evidence question. And when you get into the substantial evidence, they put in a lot. Your Honor, we don't dispute that there was a volume of evidence that was submitted by their side. However, we do submit that that evidence was available for us to make our point that there was no prima facie case of nexus in the first instance. And we pointed to the declaration testimony of Dr. Bajaj, who does not... Did you ever say those words to the board? Which words, Your Honor? There is no evidence to establish a prima facie case of nexus. I believe we used... I'm going back to the quote that we had prior, which I apologize. 1787. 1788. 1788, that's correct, Your Honor. That's it. And by that, I believe we meant a prima facie case of nexus. Well, you say the word nexus. I mean, that's why. Whether the board decided to apply a presumption or just said, OK, there's no presumption. Let's look at the nexus. And they're evaluating the evidence and we're reviewing that evidence based on substantial evidence. I see what you're putting forward. There's no... There's no evidence. I mean, there's no citation. It's your response to what their experts said. And essentially, you are arguing about the almost admissibility of the reports, whether they're connected at all to the patented features. Fine, maybe you were right. If it were not a substantial evidence review here, maybe we'd take a careful look at that. But that's where I am. So tell me where I'm wrong. Understood. And, Your Honor, I think that there is evidence that this Court can look at that's already of record. And that is, for example, the deposition testimony that we took of Dr. Bajaj. I deposed him and my colleague, Mr. Christie, deposed him on issues of secondary consideration. And there, it was established and Dr. Bajaj admitted that this report, which Eagle View alleges was commercially successful, was actually an old report that was from 2014. We pointed that out to the Board. We pointed out that deposition testimony to the Board at the oral hearing as well and in our trial materials. Additionally, Your Honors, I think you can look to the evidence that... What about Mr. Johnson's testimony? Mr. Johnson, yes, Your Honors. And I think that his testimony does not cure the deficiencies of Dr. Bajaj's testimony because Mr. Johnson only declares that there were substantial sales of these roof reports and that they were made using the Twister and RenderHouse software programs. He says absolutely nothing with respect to the merits of the patent claims of any of these patents. Were they actually made using these method steps of these patent claims? Neither expert does that, Your Honors. And that's what's critical here to a showing of whether there is nexus in commercial success. And, Your Honors, you can look to the user manuals that Eagle View provided in this case. And I don't think that we're prohibited from looking at that either. I'm sorry, but on page 26 of the Board's opinion, they cite Mr. Johnson's testimony that the report submitted into evidence, quote, reflects sales of reports created using Twister and RenderHouse products. Correct, Your Honor, but it doesn't... I don't understand how, under a substantial evidence standard, you'd like me to say that that isn't testimony that these reports were created using Twister and RenderHouse. We don't dispute created using Twister and RenderHouse, Your Honors. What we dispute is created using the claims, the merits of the patent claims. And that is what the case law requires. The DiMarco case, for example, Your Honor, says that. The patent team must show a legally sufficient relationship between that which is patented and that which is sold. The analysis there goes toward... We presume that such a nexus applies for objective indicia when the patentee shows that the asserted objective evidence is tied to a specific product and that product embodies the claimed features and is coextensive with them. Where haven't they? Well, they have not, Your Honors, because if you look at the Twister and RenderHouse packages themselves and you compare that software package, the allegedly commercially successful product, to what the claims are that are recited in each of these patents, the claims cover very limited GUI functions for generating a roof estimate report. The 770 patent talks about using visual markers that are ultimately to create a roof estimate report. If we go to the other patents... This is all attorney argument by you. You chose not to introduce an expert who could have possibly put into evidence, which would be evidence as opposed to attorney argument, some sort of rebuttal of their expert's claim that all this was embodied. Your attorney argument falls on deaf ears. Well, Your Honors, we think that... Evidence. Your Honor, we think that the burden did not properly shift to us at that point as a matter of law for us to adduce evidence of our own by way of our own expert. It was our argument that there was never a case of nexus to begin with, and certainly there was no presumption of nexus because that never appeared until the final written opinion in the case. But again, Judge Moore, just to point you to where there is evidence, we do submit that it is proper for us to look at the testimony of Dr. Bajaj, to look at their roof estimate reports, and in particular to consider the cross examination that we had conducted. In the IPR proceedings, Your Honors, that's a mechanism for the petitioner to adduce further evidence by taking a cross examination of an expert's direct testimony. That's evidence that we adduced. In fact, we spent a lot of time going over with Mr. Bajaj, Dr. Bajaj, what actually had he looked at, and he candidly admitted, you know, this is a 2014 copy of a report that was generated from this system. He does not tie it in any way, shape, or form to the thousands of reports that Eagleview claims was commercially successful. It comes down to the Board considered your argument on appeal, although I'm not clear, certainly in your reply you didn't cite a lot of record evidence, but they considered your argument on appeal, and they said Pratt & Oner has provided extensive evidence that the products are co-extensive with 26, and we are persuaded that Nexus exists, the product's an issue. So you're saying that on a substantial evidence review, if we look at the record and the arguments you presented with respect to the record, which as far as we're all agreed, consists of these three pages, right? And that's enough to disclose a lot of general substantial evidence. It's our fault that you're way over time, we'll reserve some rebuttal. Thank you very much, Your Honor. Thank you, Chief Judge Prost, and may it please the Court, John O'Quinn on behalf of Eagleview, the Board upheld the patentability of the claims at issue based on the facts before it. On appeal, as the panel has heard, Zachtweyer tries to manufacture legal issues out of those factual findings because it regrets not putting on any rebuttal evidence to the objective indicia of non-obviousness, evidence that included Zachtweyer's own praise of the technology at Appendix 1471, as well as its parents' offer to buy it for $650 million. The problem for Zachtweyer... All of that has little to do with the difference between presumption of Nexus or Nexus. That's all Nexus testimony, right? I think that's right, Chief Judge Prost. All of that is testimony about the commercial success, about the praise of others. Of the patented features. That's right. And so the arguments that they do make, Chief Judge Prost, are arguments that are either waived or foreclosed by precedent. Waiver, I'm a little... Waiver is not a popular thing in all instances. So is it fair to say we're not really talking about waiver? We're talking of the failure to make an argument, let alone put on evidence along the lines they're arguing here? I think that's absolutely right, Chief Judge Prost. You could call it forfeiture as opposed to waiver. This is simply not an argument that they presented to the Board. They didn't argue to the Board that you can't have Nexus when there are multiple patents. They didn't argue to the Board that you can't have Nexus when there are unclaimed features. And indeed such an argument would be inconsistent with a long line of this Court's cases like WBIP versus Kohler, PPC Broadband, Ecolochem, Polaris versus ArcticCat. And so they didn't make any of those arguments. The Board's conclusion with regard to Nexus says coextensive. So why are we even arguing this? You say in your petition, you said repeatedly, this is the patented invention. What we sold is the patented invention. What we sold are the patented features. And then the Board concludes it's coextensive. Do you think that was not supported by substantial evidence? No, it absolutely is supported, Chief Judge Prost, and there was no evidence put on to the contrary. I think this case is much like WBIP and much like Polaris in terms of the Board's finding of Nexus. And it's not even ultimately clear to me that the Board had to rely on the presumption. If you look at Appendix 31, for example, they find that the patent owner has shown strong evidence of Nexus between the Twister and RenderHouse products and the claim. So I think either way that you look at it, the Board found that there was Nexus and there's evidence to support that. You relied and the Board relied on industry praise. And that industry praise was definitely focused on the technological advances of the claims, correct? That's absolutely right, Chief Judge Prost. If you look, for example, at Appendix 1471, their own CEO referred to our technology as, quote, key technology. They recited to their investors that our technology was used by 24 out of 25 insurance companies, 30,000 building contractors. That's all at Appendix 1479 on an investor. What's a top insurance company? I think that they mean like insurance companies with a nationwide presence or substantial insurance companies. There are obviously thousands of insurance companies across the country, Judge Wallach. That was my only marginal question. Well, if the Court has no further questions, I'm happy to cede back the balance of my time. Thank you, Chief Judge Prost. We'll restore two minutes. Thank you, Your Honors. So, Your Honors, just in rebuttal, I think it's important for us to keep track of the timeline of this case in particular and as it went forward in the PTAB. Eagleview argued first in their patent donor's reply that there was this evidence of commercial success. We argued that there was not any evidence of nexus between commercial success and the merits of the patent claim. That was proper for us to do, and we submit, Your Honors, that there was additional evidence that we deduced by virtue of the deposition testimony of Dr. Pajaj, which supported that argument that there was no nexus. There was a candid admission by him that the report that he pointed to was not the ones that were actually commercially successful and certainly not the body of reports that Dr. Johnson says were commercially successful. So, I think this Court can look to that and can make the conclusion that there was evidence deduced, at least on our side. As I mentioned earlier, we also believe that it is proper for all of the parties in these proceedings to look at the evidence, no matter who proffers the evidence, and use it to the parties' best arguments. That happened here with respect to the user manuals themselves, Your Honors. We argued that the user manuals talk about functionality that goes way beyond the claims issued in the particular patents. Where is that? That's part of the argument that we I saw the argument in gray in our I believe at the oral hearing, Your Honors, and we can try to track down Oh, okay, but I'm not looking Yes, not in the actual pleading documents. Correct. So you made the arguments but didn't put them in the appendix? I don't think we did that, Your Honors. I will confirm. Can I just ask you something? Sure. Is it your view, because our case law the start of our case law was reasonably commensurate? Yes. Okay. Is it your view that reasonably commensurate means that if it has any bells or whistles that aren't articulated in the claims that it would not be reasonably commensurate in scope? I don't think it's that broad, Your Honors, but I think, for example, if we look at the Brown and Williamson case Because wouldn't it be then that no comprising claim would probably ever be entitled to a presumption of nexus because comprising claims on their face allow for the open-ended introduction of additional elements? Yes. And so I'm trying to understand what your view of coextensive or reasonably commensurate in scope, and our very first case on this said reasonably commensurate and later cases paraphrased it as coextensive. Sure. So I'm just trying to understand where you draw the line because I think that is most of your argument on appeal that there are these other claims or features in the product and therefore the presumption would not appropriately have attached. So I'm trying to understand where you draw that line. And I think, Your Honors, it goes to the actual claim language itself. So we've got to look at the claim language of, for example, the 454 patent, which recites five or six, by memory I'm going, steps that occurred before there's a generation of the actual roof estimate report. Patent Office found, by the way, that that last limitation was printed matter. So really the merits of the actual patent claim are what's recited earlier on it. Displaying a first aerial image, displaying a second aerial image. Displaying a visual marker on the first one, moving the first marker, indicating movement on the second aerial image, etc. That's the patentable merits of the claim here. So, Your Honor, to your point, I think the coextensiveness requirement has to look at let us first identify what the merits of the claim are. And then let's look at the product. Now, they have chosen to draft their claims in a certain way. They've chosen to claim this functional procedure within this larger software package called Twister and Renderhouse. And the evidence firmly establishes, Your Honor, that this package is a massive system that has multiple different ways of generating reports. They didn't draft a patent claim that covers the entire system. And I think that there is gray area, Your Honor, absolutely, and I'm not disputing that. But I think it has to be a very laser focus of the claims. Without the patented claims, would the product be usable or saleable? That is I think so, Your Honor, because I think they're... Now, we're not talking about evidence of record here, so I'm not making any representations. But if we look at, for example, the user manuals of the packages themselves, the software packages, they disclose multiple different ways of generating roof estimate reports. And we try to put that in the diagram that we have in our reply here, Your Honors. Talks about adjusting, setting roof planes, roof pitches. None of these patents talk in any way, shape, or form about pitches. It's your brief, but I thought some of that was marked confidential. Am I wrong about that? I just want you to recall that. Okay. I will stop there. So, thank you, Your Honors. Unless there's any further questions. Thank you. Thank you. We thank both parties and the cases submitted.